**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Mark Serrano, | NO. C 06-04433 JW |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**; **DENYING CERTIFICATE OF APPEALABILITY** |
| v. | |
| Mary Butler, Chief Prob. Officer for Napa Cnty., California, | |
| Respondent. | |
| _____/ | |

## I.  INTRODUCTION

This matter is now before the Court for consideration of Mark Serrano's ("Petitioner") Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254[1] concerning his 2003 conviction in Napa County Superior Court.  For the reasons set forth below, the Petition is DENIED as to all claims.  In addition, no certificate of appealability will be issued for Petitioner's claims.

## II.  BACKGROUND

**A.    Facts**

The California Court of Appeal summarized the facts of Petitioner's case as follows:[2]

> [Petitioner] met and became friends with the victim, Carrie H., while they were both students at a college in North Carolina. [Petitioner] moved to California after his graduation.  Carrie telephoned [Petitioner] in the Fall of 2002 and told him of her

---

[1]  (Verified Petition for a Writ of Habeas Corpus; Exhibits; Supporting Memorandum, hereafter, "Petition," Docket Item No. 1.)

[2]  (Memorandum of Points and Authorities in Support of Answer, hereafter, "Answer," Ex. A, Opinion of the California Court of Appeal, hereafter, "Appeal," Docket Item No. 8; see also Notice of Lodging Exhibits with Court, Docket Item No. 9.)

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

professional interest in the wine industry in the Napa Valley, where [Petitioner] worked.  [Petitioner] offered to let Carrie stay at his house and to show her around during her visit.  Carrie stayed with [Petitioner] for two and a half weeks, during which time she accepted a job in the Napa Valley and commenced an intimate relationship with [Petitioner].  [Petitioner] offered to let Carrie stay at his house while she looked for a permanent place to live, and Carrie accepted the offer.

The two got along well initially but eventually began to argue.  On one occasion in February 2003, [Petitioner] got mad and hit Carrie because he did not like the music she played on the car stereo.  She moved out of [Petitioner's] home on March 1.  The two continued to date until April 15th when Carrie ended the relationship.

Over the next several days, [Petitioner] left voice mail messages for Carrie, which she did not return.  When Carrie finally answered a telephone call from [Petitioner] on April 22, he was angry that she had not returned his earlier calls.  Carrie told [Petitioner] that their relationship was over.  [Petitioner] said that he wanted to see her one more time, but Carrie refused.  [Petitioner] then told Carrie that he wanted to make a video recording of the two of them engaging in sexual acts as she had done with a previous boyfriend.

The next morning, [Petitioner] telephone[d] Carrie and told her he had stolen the video she had made with her old boyfriend (the prior video) from her car.  He stated that if she did not make a sex video with him he would e-mail copies of the prior video to her employer, her school contacts and to amateur pornography websites.  [Petitioner]
said he would return the prior video to her if she made a new sex video with him.  Carrie asked [Petitioner] why he was doing this to her, but he did not respond.  [Petitioner] told Carrie that something worse would happen to her if she went to the police about his demand.

Carrie did not want the prior video to be revealed to others because she was embarrassed about it and was afraid that it could mar her professional relationships to the extent that she would lose her job.  She considered making a sex video with [Petitioner] for these reasons.  Instead, Carrie reported [Petitioner's] threats to the Napa police.

Carrie provided the police with a copy of an e-mail message that [Petitioner] had sent her.  The e-mail from [Petitioner] originated from the address "Carrie[victim's last name]@hotmail.com."  The message explained that [Petitioner] would use that address to e-mail the prior video to her various contacts, and that the longer Carrie took to comply with his demands "the more personal the recipients [would] be.  In addition, graphic intensity of the file will increase."  [Petitioner] also explained that he was coercing her to pay her back for disrespecting him and [the] other men she previously dated.  [Petitioner] wrote that they should follow through on his plan the next day.

The police recorded "pretext telephone calls" between Carrie and [Petitioner] discussing his ultimatum.  During one of these telephone calls, [Petitioner] arranged for Carrie to come to his home at 7 p.m. to make the video.  Police officers who served a search warrant on [Petitioner's] residence at the designated time found [Petitioner] at home with music playing, candles lit, two wine glasses set out, a video camera on a tripod aimed at the bed, and an assortment of sex toys displayed.  The police also found an

explicit three-act script of sexual activities for the new sex video as well as two
copies of a video recording of Carrie engaged in sexual acts with another man.

(Appeal at 1-3.)

## B.   Case History

On April 28, 2003, the Napa County District Attorney charged Petitioner with attempted rape

under Cal. Pen. Code §§ 261(a)(2) ("Section 261") and 664.[3]  On September 18, 2003, the jury

"found [Petitioner] guilty of attempted rape under the theory that he tried to coerce the victim to

engage in sexual intercourse by threatening to disseminate a sex video the victim had previously

produced with a prior boyfriend."  (Appeal at 1.)  On November 3, 2003, the court suspended

imposition of a sentence and placed Petitioner on three years of probation.  (Id.)

On November 3, 2003, Petitioner appealed his conviction to the California Court of Appeal.

(Petition at 4.)  On March 17, 2005, the California Court of Appeal affirmed the trial court's

judgment and sentence.  (Appeal at 1.)  On June 29, 2005, the California Supreme Court denied

review.  (Petition at 4.)  On July 20, 2006, Petitioner filed his Petition.  (See Petition.)

## III.  STANDARDS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district

court may entertain a petition for writ of habeas corpus "on behalf of a person in custody pursuant to

the judgment of a State court only on the ground that he is in custody in violation of the Constitution

or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with

respect to any claim adjudicated on the merits in state court proceedings unless the adjudication:

"(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in

a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  Id. § 2254(d).

A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for

purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis

---

[3]  (Petition at 2; Answer at 1.)

United States District Court

For the Northern District of California

1  of the substance of the constitutional claim advanced, rather than deciding the claim on the basis of a

2  procedural rule.  Barker v. Fleming, 423 F.3d 1085, 1092 (9th Cir. 2005); Lambert v. Blodgett, 393

3  F.3d 943, 969 (9th Cir. 2004).

4  **A.      "Clearly Established Supreme Court Law"**

5         Clearly established federal law, as determined by the Supreme Court of the United States

6  refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the

7  relevant state-court decision.  See Williams (Terry) v. Taylor, 529 U.S. 362, 412 (2000); Barker, 423

8  F.3d at 1093.  "A federal court may not overrule a state court for simply holding a view different

9  from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  Mitchell v.

10 Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal

11 issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an

12 unreasonable application of, clearly-established federal law.  See Stevenson v. Lewis, 384 F.3d

13 1069, 1071 (9th Cir. 2004).

14        The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether

15 constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the

16 rule must be seen as 'established' by the Supreme Court."  Williams, 529 U.S. at 391 (referring to

17 case-by-case analysis applicable to ineffective assistance of counsel claims); see, e.g., Jackson v.

18 Giurbino, 364 F.3d 1002, 1009 (9th Cir. 2004).  There are, however, areas in which the Supreme

19 Court has not established a clear or consistent path for courts to follow in determining whether a

20 particular event violates a constitutional right; in such an area, it may be that only the general

21 principle can be regarded as "clearly established."  Lockyer v. Andrade, 538 U.S. 63, 64 (2003).

22 When only the general principle is clearly established, it is the only law amenable to the "contrary

23 to" or "unreasonable application of" framework.  Id. at 73.

24        Circuit decisions may still be relevant as persuasive authority to determine whether a

25 particular state court holding is an "unreasonable application" of Supreme Court precedent or to

26 assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert.

27 denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

28                                            4

**United States District Court**
For the Northern District of California

**B.      "Contrary To"**

While the "contrary to" and "unreasonable application" clauses have independent meaning,

they often overlap. See Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on

other grounds, Lockyer, 538 at 70-73 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." Williams, 529 U.S. at 413; see also Early v. Packer, 537 U.S. 3, 8 (2002)

(*per curiam*).  A "run-of-the-mill state-court decision" that correctly identifies the controlling

Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably

within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406.  Such a case should be

analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215

F.3d 1058, 1062 (9th Cir. 2000).

**C.      "Unreasonable Application"**

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

412-13; see also Brown v. Payton, 544 U.S. 133, 141-43 (2005).

"[A] federal habeas court may not issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S.

at 411; Middleton v. McNeil, 541 U.S. 433, 436 (2004) (*per curiam*); Woodford v. Visciotti, 537

U.S. 19, 25 (2002) (*per curiam*) ("unreasonable" application of law is not equivalent to "incorrect"

application of law).

The objectively unreasonable standard is not a clear error standard. Lockyer, 538 U.S. at

75-76.  After Lockyer, "[t]he writ may not issue simply because, in [the federal court's]

determination, a state court's application of federal law was erroneous, clearly or otherwise. While

United States District Court

For the Northern District of California

1  the 'objectively unreasonable' standard is not self-explanatory, at a minimum it denotes a greater

2  degree of deference to the state courts than [the Ninth Circuit] ha[s] previously afforded them."

3  Clark, 331 F.3d at 1068.  Thus, deciding whether the state court decision was unreasonable may

4  require analysis of the state court's method as well as its result.  Nunes v. Mueller, 350 F.3d 1045,

5  1054 (9th Cir. 2003).

6          Finally, habeas relief is warranted only if the constitutional error at issue is a structural error

7  or had a "'substantial and injurious effect or influence in determining the jury's verdict.'"  Penry v.

8  Johnson, 532 U.S. 782, 795-96 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619, 638 (1993)).

9          Where, as in this writ, the California Supreme Court denies review of Petitioner's claim

10  without explanation, the Court looks to the last reasoned state court decision in conducting habeas

11  review.  See Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000) (citation omitted)

12  (holding that the district court "looks through" the unexplained California Supreme Court decision

13  to the last reasoned state court decision), cert. denied, 534 U.S. 944 (2001).  The California Court of

14  Appeal rendered the last reasoned state court decision in Petitioner's case.

## IV.  DISCUSSION

16          Petitioner contends that the California Court of Appeal erred in finding that Section 261 was

17  not unconstitutionally vague as applied to him and provided Petitioner "fair warning" that his

18  conduct could constitute attempted rape.  (Petition at 14.)

19  **A.    Fair Warning**

20          At issue is whether the Court of Appeal properly applied the rules governing the federal

21  constitutional right to due process of law regarding statutory vagueness and "fair warning."

22          A state criminal statute may be challenged as unconstitutionally vague or overbroad by way

23  of a petition for a writ of habeas corpus by a prisoner convicted under the statute.  See Vlasak v.

24  Superior Court of California, 329 F.3d 683, 688-90 (9th Cir. 2003).  A statute may be

25  unconstitutional "on its face" or "as applied."  A successful challenge to the facial constitutionality

26  of a statute invalidates the statute itself whereas a successful as-applied challenge does not render

27

28                                                6

1  the statute itself invalid but only the particular application of the statute.  Foti v. City of Menlo Park,

2  146 F.3d 629, 635 (9th Cir. 1998).

3       A criminal statute that does not define a crime with sufficient certainty violates the

4  constitutional guarantee of due process of law under the Fourteenth Amendment.  United States v.

5  Lanier, 520 U.S. 259, 266 (1997).  The vagueness doctrine "bars enforcement of a statute which

6  either forbids or requires the doing of an act in terms so vague that men of common intelligence

7  must necessarily guess at its meaning and differ as to its application."  Id.  In evaluating a vagueness

8  claim, the "touchstone is whether the statute, either standing alone or as construed, made it

9  reasonably clear at the relevant time that the defendant's conduct was criminal."  Id. at 267.

10      The United States Constitution also prohibits retroactive enlargement of the reach of criminal

11  statutes by judicial interpretation.  Rogers v. Tennessee, 532 U.S. 451, 455-56 (2001); Poland v.

12  Stewart, 117 F.3d 1094, 1099 (9th Cir. 1997).  "If a judicial construction of a criminal statute is

13  unexpected and indefensible by reference to the law which had been expressed prior to the conduct

14  in issue, the construction must not be given retroactive effect."  Rogers, 532 U.S. at 457 (discussing

15  Bouie v. City of Columbia, 378 U.S. 347 (1964)).

16      The guiding principle established in Bouie is that a state law must give "fair warning" of the

17  conduct that it makes a crime.  See Rogers, 532 U.S. at 457-60.  Therefore, unforeseeable judicial

18  enlargement of a criminal statute violates the defendant's due process right to "fair warning."  Clark

19  v. Brown, 450 F.3d 898, 911 (9th Cir. 2006).  Fair warning is not violated unless judicial

20  construction of a criminal statute represents a "radical and unforeseen" departure from former law.

21  Webster v. Woodford, 369 F.3d at 1062, 1069 (9th Cir. 2004).  The beginning point for a Bouie

22  analysis is the statutory language at issue, its legislative history and judicial construction of the

23  statute.

24      Here, the Court of Appeal examined California state law—Section 261 of the California

25  Penal Code—to determine whether Petitioner's constitutional right to "fair warning" was violated by

26  the trial court's application of the allegedly vague rape statute.  Thus, the Court looks to whether the

27

28                                                              7

United States District Court
For the Northern District of California

1   Court of Appeal's determinations regarding the statutory language, legislative history and case law

2   pertaining to Section 261 were reasonable.

3         An interpretation of state law made by an intermediate appellate court must be followed and

4   may not be "disregarded by a federal court unless it is convinced by other persuasive data that the

5   highest court of the state would decide otherwise."  Hicks v. Feiock, 485 U.S. 624, 629 (1988).

6         **1.      Statutory Language**

7         Section 261(a)(2) of the California Penal Code defines rape as an act of non-consensual

8   sexual intercourse "accomplished against a person's will by means of force, violence, duress,

9   menace or fear of immediate and unlawful bodily injury on the person or another."  Cal. Penal Code

10  § 261(a)(2).  "Duress" is defined in Section 261 as "a direct or implied threat of force, violence,

11  danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform

12  an act which otherwise would not have been performed, or acquiesce in an act to which one

13  otherwise would not have submitted."  Id. § 261(b).  The total circumstances, including the age of

14  the victim and his or her relationship to the defendant, are factors to consider in appraising duress.

15  Id.

16        The Court finds that the Court of Appeal was not unreasonable in concluding that Section

17  261 provided Petitioner with "fair warning" that his actions would constitute rape.  Petitioner's

18  "threat" to e-mail the victim's sex tape to her work, school and amateur porn sites was an act of

19  "retribution," which is one basis for "duress" as defined by the statute.  Cal. Penal Code § 261(b).

20  Given the professional and personal consequences that could result from the revelation of a sex tape,

21  the Court finds that a "reasonable person" in the victim's situation would have felt "compelled to

22  perform an act which otherwise would not have been performed."  Id.  Indeed, the victim herself

23  testified that she was considering submitting to Petitioner's demands.  (Appeal at 2.)  Thus, because

24  Section 261(a)(2) explicitly criminalizes sexual intercourse accomplished through duress, the Court

25  of Appeal was reasonable in finding that Petitioner's demand for filmed sexual intercourse with his

26  victim constitutes attempted rape and that the statute provided Petitioner "fair notice" that the

27  conduct would be criminalized.  Id. § 261(a)(2).

28                                                  8

*United States District Court*
*For the Northern District of California*

United States District Court

For the Northern District of California

1   Petitioner contends, however, that duress under Section 261(a)(2) has an immediacy

2   requirement and that threats of future action can only be charged under Section 261(a)(6), which is

3   limited to physical harm.[4]  (Petition at 14.)  In rejecting this contention, the Court of Appeal relied

4   on the plain language of Section 261(a)(2), which states that rape may be accomplished "by means

5   of force, violence, duress, menace, *or* fear of immediate and unlawful bodily injury."  (See Appeal at

6   7.)  Following the plain language of Section 261(a)(2), the Court of Appeal reasonably determined

7   that the term "immediate" in Section 261(a)(2) only modifies threats of "bodily injury."  (Id.)

8   Further, the Court of Appeal noted that Petitioner was properly charged under Section 261(a)(2)

9   rather than Section 261(a)(6), because Section 261(a)(6) only applies to threats to "kidnap, inflict

10   extreme pain, serious bodily injury or death," none of which were present in Petitioner's case.[5]  The

11   Court of Appeal was reasonable in recognizing this distinction between the Sections because the

12   specific actions described in Section 261(a)(6) did not apply to Petitioner.

13   Accordingly, upon consideration of the plain language of the statute, the Court finds that the

14   Court of Appeal's determination that the statutory text was not unconstitutionally vague and

15   provided fair warning was reasonable.

16   **2.     Legislative History**

17   In 1990, the term "duress" was added to the list of prohibited methods of accomplishing

18   unwanted sexual intercourse in Section 261(a).  Sen. Bill No. 2586, 3d reading (1989-1990 Reg.

19   Sess. July 7, 1990); compare Cal. Penal Code § 261(a) (1989) with Cal. Penal Code § 261(a) (1990).

20   The addition of the term duress to Section 261 suggests a legislative intent to expand the scope of

21

22   [4]  Section 261(a)(6) states that non-consensual sexual intercourse constitutes rape "where the
      act is accomplished against the victim's will by threatening to retaliate in the future against the
23   victim or any other person, and there is a reasonable possibility that the perpetrator will execute the
      threat."  As used in the paragraph, "threatening to retaliate" means a threat to kidnap or falsely
24   imprison, or to inflict extreme pain, serious bodily injury or death.  Id.

25   [5]  (Id.)  Petitioner contends that a reading of duress that does not require immediacy of the
      threat renders Section 261(a)(6) superfluous, in violation of basic principles of statutory
26   construction, because non-immediate duress could include a threat of future retaliation by, e.g.,
      kidnaping.  The Court of Appeal implicitly denied this contention, finding that California state court
27   precedent does not require immediacy.  (See Appeal at 7.)

28                                                      9

United States District Court

For the Northern District of California

1   the statute to encompass unwanted sexual intercourse not accomplished by physical force or

2   violence.  To that end, the definition of "duress" includes the broad term "retribution."  This

3   supports the Court of Appeal's conclusion that interpreting duress narrowly to only encompass

4   physical coercion would make "retribution" redundant with the terms force, violence, menace, or

5   fear of bodily injury also listed in Section 261(a)(2).  (Appeal at 6.)

6           Accordingly, the Court finds that the Court of Appeal's determination that the legislative

7   history expanded the scope of Section 261 sufficient to give Petitioner "fair warning" that his actions

8   could constitute attempted rape and that the statute was therefore not unconstitutionally vague was

9   reasonable.

10          **3.      Case Law**

11          The Court of Appeal considered several California state court decisions in evaluating

12  whether state court precedent gave Petitioner sufficient warning that his actions were punishable

13  under Section 261.  (See Appeal at 3-13.)  First, the Court of Appeal concluded that the cases gave

14  Petitioner fair warning that non-immediate threats could be the basis for an attempted rape

15  conviction.[6]  Second, the Court of Appeal concluded that the cases gave Petitioner fair warning that

16  psychological coercion may properly support an attempted rape conviction.[7]  The Court finds that

17  the cases examined by the Court of Appeal lend strong support for concluding that Petitioner had

18  fair notice that his non-immediate psychological threats could constitute attempted rape.

19          Accordingly, the Court finds that the Court of Appeal's determination that California case

20  law gave Petitioner "fair warning" was reasonable.

21          In sum, the Court finds that the Court of Appeal was reasonable in determining that

22  Petitioner's due process right to "fair warning" was not violated by the application of Section

23

24          [6] (See Appeal at 6 (citing People v. Ward, 188 Cal. App. 3d 459, 466 (Cal. Ct. App. 1986)
    (upholding conviction under Section 261 where defendant threatened to harm victim's mother even
    though there was no evidence that defendant could immediately fulfill his threat).)

25

26          [7] (See Appeal at 6 (citing People v. Cardenas, 21 Cal. App. 4th 927, 929 (Cal. Ct. App.
    1994) (upholding conviction for sexual assault under California statute with similar language to
    Section 261 where defendant used his status as a "faith healer" to coerce victim to submit to sexual

27  contact).)

28                                              10

**United States District Court**
For the Northern District of California

1   261(a)(2).  The Court of Appeal examined each issue raised by Petitioner, and its final determination

2   is supported by the plain language of the statute, the legislative history and California state court

3   precedent.  Thus, the Court of Appeal made a reasonable determination that the statute provided

4   Petitioner with fair warning and that the statute was not unconstitutionally vague as applied to

5   Petitioner.[8]  Accordingly, Petitioner is not entitled to habeas relief on his claims.

6   **B.      Certificate of Appealability**

7          At issue is whether the Court should issue a certificate of appealability.

8          The federal rules governing habeas cases brought by state prisoners require a district court

9   that denies a habeas petition to grant or deny a certificate of appealability in the ruling.  See Rule

10  11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009).  To

11  obtain a certificate of appealability, a petitioner must make "a substantial showing of the denial of a

12  constitutional right."  28 U.S.C. § 2253(c)(2).  Specifically, if a court denies a petition, a certificate

13  of appealability may only be issued "if jurists of reason could disagree with the district court's

14  resolution of his constitutional claims or that jurists could conclude the issues presented are adequate

15  to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); see

16  also Slack v. McDaniel, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the

17  merits of his case, he must demonstrate "something more than the absence of frivolity or the

18  existence of mere good faith on his . . . part."  Miller-El, 537 U.S. at 338.  The Ninth Circuit recently

19  described this standard as lenient.  See Hayward v. Marshall, 603 F.3d 546 (9th Cir. 2010) (*en*

20  *banc*).

21         Here, the Court finds that Petitioner has not made a substantial showing of the denial of his

22  right to due process.  Reasonable jurists could not disagree with the Court of Appeal's holding that

23  Section 261 was not unconstitutionally vague as applied to Petitioner and provided Petitioner with

24  fair warning that his conduct could constitute attempted rape by duress.  There is little room for

25  disagreement that the Court of Appeal reasonably analyzed the relevant statutory provisions, as well

26

27          [8]  In light of the Court's finding that there is no error, the Court does not reach Petitioner's
    contention that the error was structural and merits automatic reversal of his conviction.

28                                                  11

1    as the legislative history and case law as not requiring that the duress be "immediate."  Additionally,

2    the Court of Appeal's manner of distinguishing Section 261(a)(6) was straightforward and followed

3    directly from the specific terms used in that Section.  Thus, the Court finds no basis for granting a

4    certificate of appealability.

5            Accordingly, the Court will not issue a certificate of appealability.

6                                      **V.  CONCLUSION**

7            The Court DENIES the Petition for Writ of Habeas Corpus as to all claims.  A certificate of

8    appealability will not be issued.  Judgment shall be entered accordingly.

9

10   Dated: December 20, 2010

                                              JAMES WARE
11                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                                12

**United States District Court**

For the Northern District of California

1  **THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

2  Dennis Patrick Riordan dennis@Riordan-Horgan.com
   Donald Meredith Horgan don@riordan-horgan.com
3  Stan Michael Helfman stan.helfman@doj.ca.gov

4

5  **Dated: December 20, 2010**                    **Richard W. Wieking, Clerk**

6                                            **By:      /s/ JW Chambers**
                                                **Elizabeth Garcia**
7                                               **Courtroom Deputy**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28